PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RYAN JAMES MCCONNELL, | ) |
| | ) CASE NO. 4:25-CV-00755 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| WARDEN IAN HEALY, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

Plaintiff Ryan James McConnell filed this action, *pro se,* against Elkton Federal Correctional Institution ("FCI Elkton") Warden Ian Healy. ECF No. 1. In his Complaint, Plaintiff claims that Warden Healy is denying him due process and equal protection, and violating his First Amendment rights by restricting his access to email based on the nature of his crime. He seeks an order granting him access to email, and a change of the Bureau of Prison's email policy.

## I. Background

The Bureau of Prisons ("BOP") allows inmates to have limited access to computer services through the Trust Fund Limited Inmate Computer System ("TRULINCS").[1] *See*

---

[1] *See* Stay in Touch, FED. BUREAU OF PRISONS, https://www.bop.gov/inmates/communications.jsp (last visited Aug. 27, 2025); TRULINC Topics, Fed. Bureau of Prisons, https://www.bop.gov/inmates/trulincs.jsp (last visited Aug. 27, 2025).

(4:25CV755)

Program Statement 4500.12, ch. 14, U.S. DEPT. OF JUST., FED. BUREAU OF PRISONS (Mar. 14, 2018). Although inmates do not have access to the internet, they are able to use TRULINCS to monitor their inmate trust accounts, send internal communication to prison staff, and to use messaging services, including email, to communicate with others outside of the prison. By participating in the TRULINCS program, inmates consent to having all of their activity, including emails and transactional data, monitored and retrained by prison personnel. Id. at § 14.2. Emails can be rejected by prison staff if they are deemed to jeopardize the safety of the institution or the public. Id. Furthermore, inmate use of TRULINCS is a privilege and the Warden or Associate Warden may deny an inmate access to all or any part of it. Id. The BOP encourages Wardens to provide all inmates with access to TRULINCS terminals due to its self-service nature. Id. at § 14.9.

An exception to this approach is carved out for public messaging services, as these involve communication with persons in the community and allow the possibility for continued criminal activity, or activity that may jeopardize the safety and security of the institution. Id. at § 14.9(a). The inmate's exclusion from participation is determined by his or her individual history of behavior. Id. With regard to sex offenders, Program Statement 4500.12 provides in relevant part:

> (1) **Sex Offenders**. Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email, or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction.

Id. at § 14.9(a)(1). To aid in this assessment, Program Statement 4500.12 provides:

2

(4:25CV755)

> As a method of identifying these inmates, staff responsible for local sex offender management should review inmates with SENTRY CMA Walsh Assignments of Certified, With Conviction, and No Conviction, to determine if their participation in the Public Messaging Service poses a realistic threat. TRULINCS automatically applies a temporary restriction on inmates' accounts with the above SENTRY CMA Walsh Assignments. These restrictions may be over-written when deemed appropriate by staff responsible for local sexual offender management and approved by the Warden.

*Id.* Program Statement 4500.12 does not categorically exclude sex offenders from TRULINCS email services. Instead, BOP officials dedicated to sex offender management individually review every inmate, including Plaintiff, for access to TRULINCS services. *Id.* The Warden has discretion to grant access to sexual offenders in non-threatening cases. *Id.*

Plaintiff alleges that he has been denied access to TRULINCS email services based on the criminal behavior that led to his conviction. Plaintiff was charged in the United States District Court for the Southern District of Ohio with one count of transportation of child pornography and one count of possession of child pornography. *See United States v. McConnell*, No. 1:21-cr-69-SJD (S.D. Ohio), Sealed Compl., ECF No. 1. Plaintiff pled guilty to possession of child pornography. *See id.*, J., ECF No. 37. The Southern District of Ohio court sentenced Plaintiff to 100 months imprisonment and ten years of supervised release. *Id.*, ECF No. 37.

In the Government's sentencing memorandum, it included certain details regarding Plaintiff's behavior related to his charge relevant to the instant Complaint. Plaintiff obtained babysitting jobs online which led to him being investigated by local authorities for sexually abusing a 5-year-old girl who he was babysitting. *See id.*, ECF No. 34 at PageID ##: 157-58. The investigation led to the babysitting website shutting down Plaintiff's account; nonetheless,

3

(4:25CV755)

Plaintiff opened other accounts on the website and continued to babysit children using an alias. *Id.*, ECF No. 34 at PageID #:158. The Federal Bureau of Investigation found a fake background check for one of his fictitious names in his email account. *Id.*, ECF No. 34 at PageID ##: 158-59. The Southern District of Ohio sentenced him on March 25, 2022 to 100 months imprisonment and 10 years supervised release. *Id.,* J., ECF No. 37.

      Plaintiff claims that the safeguards and monitoring of the TRULINCS system protects against the possibility of his misuse of the email feature. ECF No. 1 at PageID #: 7. He contends he has a First Amendment right to communicate with his family. ECF No. 1 at PageID #: 6. He also contends that he has ben denied due process and equal protection. ECF No. 1 at PageID #: 6. He claims other sex offenders have access to TRULINCS email while he was denied access. ECF No. 1 at PageID #: 7. He points out that he never had contact with a minor online, and does not know the identity of his victims, making it impossible to contact them. ECF No. 1 at PageID #: 7. He further contends he used a messaging application, not email, to commit his crimes. ECF No. 1 at PageID #: 7. He concludes that there is no evidence that granting him access to TRULINCS email would compromise the safety of the institution or the community. ECF No. 1 at PageID #: 7.

## II. Standard for Dismissal

      Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon

(4:25CV755)

which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III. Law and Analysis

Before proceeding to the merits of this claim, the Court must decide whether *Bivens*[2] provides cause of action in this context.

---

[2] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

(4:25CV755)

The United States Supreme Court recently clarified that federal courts should refrain from extending *Bivens* outside of the three specific contexts in which it has already been applied, absent the presence of special factors. *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). Congress provided a specific damages remedy for Plaintiffs whose constitutional rights were violated by state officials through 42 U.S.C. § 1983; however, they did not provide a corresponding remedy for constitutional violations by federal officials. In *Bivens*, decided in 1971, the Court recognized an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Since then, the Court allowed *Bivens* remedies in only two other contexts: (1) in a Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green*, 446 U.S. 14 (1980). The Court has not approved of an implied damages remedy under the Constitution itself. *Ziglar*, 582 U.S. at 131-32. Plaintiff's First Amendment, Due Process and Equal Protection based on his status as a sex offender, claims do not fall within the three specific contexts that the Supreme Court recognizes for *Bivens* claims. On that basis alone, this case must be dismissed.

Even if he could raise his claims under *Bivens*, he failed to state a claim upon which relief may be granted. While prisoners have a First Amendment right to communicate with the outside world, *see Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989), they do not have a constitutional right to a particular form of communication, such as email. *See e.g., Bristow v. Amber*, No. 2:12–cv–412, 2012 WL

6

(4:25CV755)

1963577, at *2-3 (S.D. Ohio May 31, 2012) (finding prisoners do not have a First Amendment right to access email); Grayson v. Federal Bureau of Prisons, Civil Action No. 5:11CV2, 2012 WL 380426, * 3 (N.D. W.Va. Feb. 6, 2012) (same). The prison provides him with telephone access, regular mail, and visitation. Plaintiff's First Amendment rights are not violated.

Moreover, while "incarceration does not divest prisoners of all constitutional protections," the "constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 228-29 (2001). In the specific context of the First Amendment, the Court has stated that "some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" Id. at 229 (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). Maintaining security, order, and discipline are essential goals of a corrections system, and prison officials therefore are accorded wide latitude in the adoption and application of prison policies and procedures. See Bell v. Wolfish, 441 U.S. 520, 546-47 (1979). "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." Shaw, 532 U.S. at 229. Plaintiff, therefore, bears the burden of "overcom[ing] the presumption that the prison officials acted within their broad discretion." Id. at 232.

In this case, the restriction of Plaintiff's access to email is reasonably related to legitimate penological objectives. Plaintiff offense conduct included using electronic messaging to obtain and share numerous images and videos of child pornography in a messaging group that focuses

7

(4:25CV755)

on sexually explicit content involving toddlers and infants. *United States v. McConnell*, No. 1:21-cr-69-SJD, Gov.'s Sent'g Mem., ECF No. 34 at PageID #: 156. Because Plaintiff utilized electronic messaging media to perpetrate his crimes, the prison deemed that providing Plaintiff with access to TRULINCS would threaten the security of the institution and pose a threat to the public. Plaintiff contends that TRULINCS is structured in a way that the limits his ability to communicate with a minor or to receive pornography through his email. ECF No. 1 at PageID #: 6-7. Nevertheless, the prison's restriction was reasonably related to legitimate penological objectives. And Plaintiff has provided no legal justification for the Court to countermand the prison's restriction.

Similarly, Plaintiff's claim for denial of due process fails to state a claim. The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest; it simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996). Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Howard*, 82 F.3d at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

8

(4:25CV755)

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. See Daniels v. Williams, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. Id. It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation. Howard, 82 F.3d at 1349.

To establish a procedural due process violation, Plaintiff first must prove that he was deprived of a constitutionally protected liberty or property interest. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995). Therefore, a liberty or property interest will not be found unless the deprivation presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Denial of access to TRULINCS email is not an atypical or significant hardship in relation to ordinary prison life, requiring due process before the deprivation can occur. See e.g., Carter v. Fed. Bureau of Prisons, No. CV 22-02801-BAH, 2024 WL 983277, at *4 (D.D.C. Mar. 7, 2024) (denial of email privileges is typical of "matters which every prisoner can anticipate are contemplated by his original sentence

9

(4:25CV755)

to prison."); *Barroca v. Hurwitz*, 342 F. Supp. 3d 178, 193 (D.D.C. 2018) (same); *Stratton v. Speanek*, No. 14–cv–120–HRW, 2014 WL 6705394, at *3 (E.D. Ky. Nov. 26, 2014) (the benefits made available to prisoners under the TRULINCS system, including the use of e-mail correspondence, are merely institutional privileges, not constitutionally protected rights, which can be limited at the discretion of the warden).

Moreover, this claim lacks merit if construed as asserting a denial of substantive due process. Substantive due process, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels, 474 U.S. at 331*. Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id.* It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscience," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349. Access to email is not a fundamental right and the act of denying a convicted sex offender access to email in prison does not shock the conscience. Plaintiff's due process claims are without merit.

Finally, Plaintiff's equal protection claim must be dismissed. He claims other inmates, including other sex offenders were permitted to access TRULINC while he was restricted from having access to email. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one

(4:25CV755)

differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

    Plaintiff has not shown disparate treatment. Although he alleges that other sex offenders have been allowed to have access to TRULINCS, he has not shown that these individuals were similarly situated to him. The decision to permit access to TRULINCS is not denied to a group as a whole, but rather is determined on a case by case basis. While Plaintiff attempts to equate inmates convicted of other sex offenses with his situation, he has not alleged any facts to suggest that all of their relevant circumstances are the same. Plaintiff failed to state a claim for denial of equal protection.

## V. Conclusion

    Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

    IT IS SO ORDERED.


 October 21, 2025                                         */s/ Benita Y. Pearson*
Date                                                        Benita Y. Pearson
                                                           United States District Judge